IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOHN G. KIMBRELL**,

      Plaintiff,

vs.                                                  No. 12cv1184 WJ/LFG

**CHAVES COUNTY CLERK, CHAVES
COUNTY COMMISSION, JAMES
COON, Chavez County Sheriff, FNU
TUCKER, Deputy Sheriff, and FNU
CLARK, Deputy Sheriff,**

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT

THIS MATTER comes before the Court on the Defendants' *Motion for Summary Judgment*, filed April 3, 2013 [Doc. 82], which asserts that Defendants Deputy Sheriffs Alan Tucker and Clark are entitled to qualified immunity. Defendants also contend that claims against the Chaves County Clerk and James Coon should be dismissed for failure to state a claim. *See id.; see* Doc. 83. Having considered the parties' submissions, the Complaint, the summary-judgment record, and the applicable law, the Court grants the summary judgment motion.

**I. Allegations in Kimbrell's Complaint and undisputed facts.**

Kimbrell rented a house to tenant Nicole Sanders until Friday, August 24, 2012, when he filed a motion for a writ of restitution and paid the service fee. *See* Doc. 83-1 at 1 (Ineatha Gay Affidavit). On August 27, 2012, the Chaves County Sheriff's Office received the signed order from the Roswell Magistrate Court ordering the Sheriff or his deputies to restore the property to Kimbrell "on or after Thursday, August 23, 2013." Doc. 83-3 (Writ of Restitution); Doc. 83-1 at 1. Ineatha Gay, a Sheriff's Office employee, told Kimbrell on August 24 that, pursuant to the

Sheriff's Office's policy, once the writ was processed and served on Sanders, Sanders "would be given 48 hours from the time and date served to vacate the premises, and that Mr. Kimbrell would receive a call from the Deputy when all was completed and be given possession of the premises." Doc. 83-1 at 1 (Gay Affidavit); Doc. 83-2 at 2 (Tucker Affidavit). On August 27, 2013, Deputy Tucker served the writ by posting it on the front door of the rental residence at 9:32 a.m. Doc. 83-2 at 1; Doc. 83-3. The writ required Sanders to be out by 9:30 a.m. on August 29, 2013. *Id.* On August 27, however, Kimbrell went inside the residence via an "unlocked [front] door." Compl. at 2 (Doc. 3 at 27). He started cleaning it out, but he called Ms. Gay and asked her if he would get in trouble for being there. *See* Doc. 83-1 at 2. Ms. Gay again told Kimbrell that he should not be there, and that he "should leave and wait for the deputy to contact him and give him possession of the property." *Id.*

According to the Complaint, when Kimbrell went into the rental property on August 27, he discovered that "there was property missing that belong [sic] to [Kimbrell]," and that tenant Sanders also still had some property in the house. Compl. at 2. After talking with Ms. Gay, Kimbrell left. *See id.* Tenant Sanders called the Sheriff's Office on the afternoon of August 27, 2013, complaining that she could not move out because the front door was locked with a new lock. *See* Doc. 83-1 at 2; Doc. 83-2 at 2. Deputy Tucker went out and confirmed that it appeared that a different lock was on the front door, and he tried, but was unable, to contact Kimbrell. *See* Doc. 83-2 at 2. Because Kimbrell had prematurely entered the property and it appeared to Deputy Tucker that the locks had been changed, on August 28, Deputy Tucker gave Sanders an extra day to move out – until August 30, 2013. *See id.*; *see* Doc. 83-4 at 1.

2

On August 29, 2013, at 9:00 a.m., Kimbrell was at the rental residence when Sanders arrived to finish moving out. *See* Doc. 83-5 at 1-2; Doc. 83-6 (Clark Affidavit). Both Kimbrell and Sanders called the Sheriff's office. Deputy Tucker was unavailable, but Deputy Clark came out to the rental property. Deputy Clark informed Kimbrell that Sanders had until August 30 at 9:30 a.m. to move out because Sanders had reported to Deputy Tucker that Kimbrell had changed the locks. Although Kimbrell denied that he had changed the locks, Deputy Clark told Kimbrell that Kimbrell could not enter the property until then and that he had to leave. *See* Compl. at 4; Doc. 83-5 at 1; Doc. 83-6 at 1. Sanders refused Kimbrell's offer to call a locksmith, stating that she and her family would deal with the locked door, and everyone left. *See* Compl. at 4. Sanders later returned and finished moving out, allegedly taking more of Kimbrell's personal property at that time. *See id.* Deputy Tucker restored the residence to Kimbrell on August 30, 2013 at 9:30 a.m. *See* Doc. 83-3; Compl. at 4.

The Complaint alleges that Kimbrell had not changed the lock; that Deputy Clark failed to properly question Sanders and simply took her word over Kimbrell's that the lock had been changed, thereby discriminating against him because he has brown skin; and that Sanders had lied to get more time to move so that she could take more of Kimbrell's personal property. *See* Compl. at 4-5. Kimbrell contends that Defendants Tucker and Clark violated Kimbrell's constitutional rights when they allowed Sanders the additional day to remove her belongings from the rental property. He also contends that, by extending the time for Sanders to remove her personal property, the Defendants "aided and abetted" Sanders in stealing Kimbrell's personal property from the rental property. Kimbrell seeks monetary damages, including punitive

damages, against the Sheriff's Department for "aid[ing] and abet[ting]" Sander's "burglary;" for discrimination; and for violating his "civil liberties." Compl. at 6.

## II. Procedural background.

The Defendants filed their motion for summary judgment on April 3, 2013, and have established that they immediately mailed a copy by certified mail to Kimbrell. *See* Doc. 87 & Exhibits. The Clerk's office also mailed a copy of the motion to Kimbrell, which was not returned to the Court. On April 16, Kimbrell filed a document entitled "*Affidavit and/or Declaration*" "in answer of Order Staying Discovery," in which he states that he was not properly served with the motion for summary judgment, and that the Court did not send the motion to him. *See* Doc. 86 at 1. Although he titles the document as an "affidavit," Kimbrell did not sign it under penalty of perjury, so it is not an affidavit, but rather, only a compilation of unsworn statements and legal arguments. On May 10, Defendants filed an additional certificate of service, stating that, on May 10, they "sent to Plaintiff via regular mail this Certificate of Service along with another copy of Defendants' Motion for Summary Judgment and Memorandum in Support [Docs. 82 and 83] that has previously been served on Plaintiff." Doc. 93 at 1.

On May 14, Kimbrell filed a combined response to the motion for summary judgment and to the Defendants' amended certificate of service, stating that he had received the motion for summary judgment on May 13, but that his April 16 Affidavit and/or Declaration "is a complete Response and stands on its own merits and needs no further response" to the motion for summary judgment. Doc. 95 at 2. On June 3, the Defendants filed a reply and a notice that briefing was complete. *See* Docs. 92, 93. But on June 6, Kimbrell filed a document entitled

4

*Plaintiff's Response to Defendants' Reply in Support of Motion to Dismiss or in the Alternative Motion for Summary Judgment*, Doc. 109, which the Court struck as an unauthorized surreply. *See* Aug. 29, 2013 Order (Doc. 123).

## II. Applicable legal standards

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.; see Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Ultimately, however, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* at 232 (emphasis added); *see Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

In determining whether the plaintiff has met his burden of demonstrating a violation of a constitutional right that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." (emphasis added)). "However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's verison of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009); *accord Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011), *cert. denied*, ––– U.S. –––, 133 S. Ct. 211, 184 L.Ed.2d 42 (2012). More specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]' " *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (second and third alterations in original) (quoting *Scott*, 550 U.S. at 380).

. . . .

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283–84 (10th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled on other grounds by*

> *Pearson*, 555 U.S. at 236) (internal quotation marks omitted). "In other words, a civil rights defendant is entitled to *fair warning* that his conduct deprived his victim of a constitutional right." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)) (internal quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) (emphasis added) (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006)) (internal quotation marks omitted).

*Estate of Bleck ex rel. Churchill v. City of Alamosa, Colo.*, No. 12–1139, __ Fed. App'x __, __, 2013 WL 5878802, *2-*4 (10th Cir. Nov. 4, 2013).

> "[O]nce a properly supported motion for summary judgment is made, the opposing party may not merely rest on the allegations in the complaint and must respond with some factual showing of the existence of a genuine issue of material fact." *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1412 (10th Cir. 1984); *see also Brown v. Chaffee*, 612 F.2d 497, 504 (10th Cir.1 979) (once prima facie case is made, party opposing summary judgment cannot rely on pleading alone, but by affidavit or otherwise must show there is a genuine issue of fact).

*Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985). Unsworn statements made in a brief or other filing are not sufficient to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."); *Lopez-Bignotte v. Ontivero*, No. 01–3208, 42 Fed. App'x 404, 408, 2002 WL 1554463, *3 (10th Cir. July 16, 2002) (affirming grant of summary judgment where "Plaintiff did not file any affidavits or submit any other admissible evidence to refute the affidavits filed by Defendants in support of their motion for summary judgment").

> In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party.

*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988) (citations omitted).

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Under New Mexico state law, when an owner of a rental property receives a judgment against his tenant for restitution of rented premises, the court shall, at the owner's request, "issue a writ of restitution directing the sheriff to restore possession of the premises to the plaintiff on a specified date not less than three nor more than seven days after entry of judgment." N.M.S.A. § 47-8-46(a).

7

### III. Analysis

**A. Kimbrell has failed to state a claim against the Chaves County Clerk, the Chaves County Commission, and Sheriff James Coon.**

The Complaint does not mention any wrongful acts committed by the Chaves County Clerk, the Chaves County Commission, or Sheriff Coon, thus he has failed to state a claim against them under *Twombly*. Insofar as Kimbrell may believe that these entities or individuals may be held liable for the Deputies' alleged constitutional violations under § 1983, he is simply wrong. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("under § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions").

Although the tort doctrine of respondeat superior applies to claims made under the New Mexico Tort Claims Act,

> [t]o name a particular entity in an action under the Tort Claims Act requires two things: (1) a *negligent* public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee. If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the Tort Claims Act. If the city or state directly supervises the employee, then the city or state can be named.
>
> . . . . Therefore, it is only when the public entity is itself acting through its employee with the right to control the manner in which the details of work are to be done, SCRA 1986, 13-403, that the Tort Claims Act comes into play.

*Silva v. State*, 106 N.M. 472, 477, 745 P.2d 380, 385 (1987) (internal quotation marks omitted) (italics added), *limited on other grounds by Archibeque v. Moya*, 116 N.M. 616, 866 P.2d 344 (1993). Instead of asserting negligence, Kimbrell's Complaint alleges that the deputies

knowingly and intentionally "aided and abetted" Sanders in committing a crime, thus the Complaint fails to describe a waiver provision permitting suit against the entities or a supervisor under the Tort Claims Act; and it further fails to describe who has supervisory authority over the deputies or whether or which entity or individual exercised that control. Kimbrell has failed to state any claim against these defendants.

### B. Kimbrell cannot show the violation of a constitutional or statutory right.

As demonstrated by the undisputed facts, Kimbrell has failed to show the unconstitutional deprivation of a property interest or violation of his right to due process. Under state law, Kimbrell had the statutory right to restoration of his property within seven days after judgment was entered against Sanders. *See* N.M.S.A. § 47-8-46(a). Documentary evidence establishes that judgment was entered in Kimbrell's favor on August 24; that the Sheriff's office received a copy of the filed order on August 27; and that Deputy Tucker restored the rental property to Kimbrell on August 30, three days later. Therefore, as a matter of law, Deputy Tucker did not deprive Kimbrell of his property interest or fail to comply with due process, nor did he violate state law.

Kimbrell's only allegations against Deputy Clark are that, after Kimbrell offered to crawl through a window at the rental property on August 29, Deputy Clark "yelled" at Kimbrell that he "was not to enter the property and should not even get close to the property" or he would be arrested. Compl. at 3. Deputy Clark enforced the writ and Deputy Tucker's lawful decision to give Sanders until August 30 to move out. As a matter of law, Deputy Clark did not deprive Kimbrell of a constitutionally-protected property interest, nor did he violate state law. Therefore,

Kimbrell has failed to establish that either Deputy violated Kimbrell's constitutional rights, and the Deputies are entitled to qualified immunity under § 1983.

Kimbrell's legal conclusion that Deputy Clark created the situation in which Sanders could steal Kimbrell's personal property by threatening to arrest Kimbrell if he entered the property is without merit. Even if Deputy Clark ordered Kimbrell not to physically be on or "close to" the rental property, nothing precluded Kimbrell from observing Sander's move from a reasonable distance and calling Deputy Clark or Deputy Tucker if he saw Sanders taking Kimbrell's personal property. Kimbrell points to no legal authority holding that an officer has a duty to stand guard and protect a landlord's personal property until a tenant moves out. There are no allegations that either Deputy Clark or Deputy Tucker actually assisted Sanders in moving out or that either of them had any idea when Sanders would return to finish moving out of the locked residence. Kimbrell's legal remedy for his stolen personal property is against Sanders, not against the Deputies or the Sheriff's Department.

There also are no facts supported by documentary evidence or a sworn affidavit from which a jury could infer that either Deputy Tucker or Deputy Clark discriminated against Kimbrell on the basis of his race. Kimbrell complains bitterly that the Officers took Sander's word against his solely because she apparently is white and he has "brown skin,[1]" and his Complaint alleges that the Deputies did not investigate or question Kimbrell to determine the true facts. Compl. at 5. But Deputy Tucker submitted an unrebutted affidavit stating that he did, in fact, investigate to see if the door was locked after Kimbrell had undisputedly entered the residence via an unlocked door on August 27; that Deputy Tucker saw that the door was locked

---

[1] Kimbrell does not allege any facts describing what race he is; he simply says he is "brown" or has "brown skin." Compl. at 5, 6.

and that it appeared that the lock was different from the lock that was there when he posted the writ; that tenant Sanders informed Deputy Tucker and Deputy Clark that she could not get into the house through the front door and Deputy Clark found that to be true on August 29; and that Deputy Tucker attempted to contact Kimbrell on August 27.  Under these facts, a jury could not reasonably infer that Deputy Tucker's belief that Kimbrell had changed the locks and his decision to extend Sander's opportunity to finish moving out because Kimbrell improperly entered the rental property on August 27 and Sanders could not access the property was motivated by racial discrimination.

**IT IS ORDERED** that the Defendants' motion [Doc. 82] is GRANTED, and judgment is entered in favor of Defendants on all claims.

_____
**UNITED STATES DISTRICT JUDGE**